Filed 10/30/15; pub. order 11/24/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| JENNIFER KATHARINE SABATO,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>GERALD AUSTIN BROOKS,<br><br>        Defendant and Appellant. | C075028<br><br>(Super. Ct. No. PFL20130584) |

Defendant Gerald Austin Brooks appeals in propria persona from an August 28, 2013, restraining order entered against him, after a hearing, pursuant to the Domestic Violence Prevention Act (DVPA).  (Fam. Code, § 6200 et seq.)[1]

Defendant asserts that the trial court lacked personal jurisdiction over him because, at the time of the commencement of this proceeding and at the time of the hearing, he lived out of state.  Defendant further asserts that the trial court erred in failing or declining to consider his opposition papers he sent to the court by fax on the morning of the hearing.

We conclude that, because defendant failed to properly move to quash service, he waived his challenge to the trial court's exercise of jurisdiction over him.  We further

---

[1]  Further undesignated statutory references are to the Family Code.

1

conclude that, assuming the trial judge ever saw defendant's untimely opposition papers, it would have been proper to disregard them because defendant attempted to file them by fax in violation of the local rules of court.[2]

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a request for a domestic violence restraining order in the Superior Court for El Dorado County on August 16, 2013. She sought a restraining order protecting herself and two named nieces from defendant.

In her declaration, plaintiff stated that the parties were married in 2003, but they separated in 2008. They attempted reconciliation, but plaintiff filed for divorce in June 2012 and the couple's divorce was finalized in December 2012. Plaintiff set forth detailed allegations of defendant's violent, threatening, and intimidating behavior before and during the marriage. She further asserted that defendant had been harassing her since the parties reached their divorce agreement in September 2012. Plaintiff stated that, between August and December 2012, defendant sent her frightening text messages, stating, for example, " 'nothing will separate us; we are always going to be together, we will always be one, nothing can separate us.' " Plaintiff also learned that defendant had told his roommates that the parties would "be back together and remain married forever."

---

[2] The plaintiff filed a motion requesting that this court take judicial notice of the fact that, on September 8, 2014 (after this appeal commenced), defendant filed a change of address with this court, changing his address from Abilene, Texas, to Glendale, California. However, "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3, quoting *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) Moreover, there is no need to notice the matter that is the subject of plaintiff's motion because defendant waived his jurisdictional claim by not properly moving to quash. Accordingly, we deny plaintiff's motion for judicial notice.

2

Additionally, in or about September 2012, plaintiff learned that defendant had purchased ammunition for the first time for a gun he had owned for many years. On November 5, 2012, plaintiff wrote defendant a "formal request," asking him not contact her or her family. Defendant responded that he would not contact her again unless she needed him.

Plaintiff stated in her declaration that she did not hear from defendant until March 2013. She stated, "**I am being harassed by him on average of one time a week since March.**" Defendant texted her through his email on June 28, 2013. On July 4, 2013, he texted plaintiff through his mother's cell phone. On July 13, 2013, he sent her a gift through the mail. On July 17, 2013, he emailed her at multiple email accounts. On July 22, 2013, he texted her. On July 31, 2013, he sent plaintiff an email "to a new 'guessed account,' " asking to talk. According to plaintiff, in an August 5, 2013, email, the pattern changed and defendant started to blame her. Plaintiff stated, "He is never going to stop harassing me." She asserted that defendant's anger was escalating. She was in fear for her life and for the lives of her family.

On August 16, 2013, the trial court issued a temporary restraining order. The court also issued a notice of court hearing, notifying defendant that a hearing was scheduled for August 28, 2013, at 8:30 a.m. in the Superior Court, El Dorado County, 495 Main Street, Placerville, CA 95667. The notice informed defendant that, if he wished to respond in writing, he was to (1) have a copy of a DV-120 "Response to Request for Domestic Violence Restraining Order" form mailed to the plaintiff, and (2) file a copy of that form with the court. No address for the court appeared on the temporary restraining order or the notice other than the 495 Main Street address. The notice further informed defendant: "Whether or not you respond in writing, go to the court hearing if you want the judge to hear from you before making orders."

On the morning of the August 28, 2013, hearing, a clerk's office for the Superior Court, El Dorado County, received a faxed document and cover letter from defendant. The document was entitled "Gerald Austin Brook's Plea to the Jurisdiction, Special

3

Appearance, Motion for Continuance of Hearing, Subject to Plea to the Jurisdiction, and Response to Request for Restraining Order." (Hereafter, the opposition papers.) The cover letter was dated August 28, 2013, and addressed to "Administration, Placerville Court, 2850 Fairlane Court, Ste. 110, Placerville, CA 95667." The letter reads in pertinent part, "Dear Administrator: [¶] Please find enclosed Gerald Austin Brook's Plea to the Jurisdiction Plea to the Jurisdiction [*sic*], Special Appearance, Motion for Continuance of Hearing, Subject to Plea to the Jurisdiction, and Response to Request for Restraining Order. [¶] Thank you for your attention to this matter." The letter also bore the words, "VIA FAX NO. (530) 295-2536 AND E-MAIL TO courtadmin@eldoradocourt.org" and "VIA FIRST CLASS MAIL." The "fax send report" indicates the opposition papers were received on a superior court fax machine at 7:58 a.m. on the morning of August 28, 2013, from a law office in Abilene, Texas. No documents indicated when the letter purportedly was mailed by first class mail. Defendant averred that the opposition papers were "forwarded to" plaintiff on August 28, 2013.

In his opposition papers, defendant asserted that he was not subject to the jurisdiction of the court because, on or about May 23, 2013, he moved to Abilene, Texas. He also stated that for the approximately 12 years he lived in California, he had lived in Ventura and Los Angeles Counties. He stated that he had never resided in El Dorado County, and therefore claimed that he was not subject to the jurisdiction of the El Dorado County Superior Court. He purported to make a special appearance by this document, without waiving the jurisdiction issue. Defendant also made a lengthy denial of the merits of plaintiff's claims. Among other things, defendant said he sent plaintiff "non-threatening messages" for six months in an attempt to reconcile, but stopped when he got a call from "an El Dorado [S]heriff" on August 9, 2013.

The trial court conducted the hearing on August 28, 2013. The judge who presided over the case did not mention defendant's faxed opposition papers during the

4

hearing. It is not entirely clear on this record whether the judge ever actually received defendant's opposition papers. As noted, a superior court fax machine received the document at 7:58 a.m., only 32 minutes before the time the hearing was calendared. And the courtroom where the hearing was calendared was located at 495 Main Street in Placerville, but the cover letter for the document was addressed to "Administration, Placerville Court" at 2850 Fairlane Court, Suite 110, in Placerville. Moreover, as we discuss *post*, the El Dorado County Superior Court does not accept fax filing, and because no file stamp appears on the copies of the opposition papers in the record before us, it does not appear defendant's papers were accepted for filing by the clerk.

At the hearing, plaintiff testified that defendant had hacked into her email accounts, stolen one of her house keys, and sent her a handwritten letter and unwanted gifts. She realized defendant had hacked into her email account when defendant referenced facts he could not have otherwise known.

Plaintiff also testified that defendant moved in with mutual friends, John and Annie Burgen (the Burgens)[3] for five to six months after the parties separated. The Burgens told her that they suspected defendant had hacked into her email or Facebook accounts. The Burgens indicated that defendant had talked about facts that, otherwise, he would not have known. The Burgens inspected plaintiff's computer, and they discovered indications that defendant had hacked into her email account.[4] When the Burgens attempted to help plaintiff secure her email account, they observed indications that defendant was, at that moment, attempting to access the account. The Burgens checked their computer, which they had allowed defendant to use. They discovered that

---

[3] The Reporter's Transcript spells the Burgens' last name as "Bergen."

[4] Plaintiff testified concerning specific indictors demonstrating that the account was accessed from other addresses, presumably by defendant, and she provided affidavits from the Burgens and a map which was submitted in connection with her contentions in this regard. However, these submissions do not appear in the record on appeal.

defendant had been logging into plaintiff's accounts regularly, and had saved passwords for her accounts.

Plaintiff also testified that defendant had attempted to track her down in person. He discovered which church she had been attending and contacted the pastor, seeking to have the pastor facilitate a reconciliation between the parties.

Plaintiff testified that, at some unspecified time, she began to notice that "things in [her] house were missing or out of place. Things just didn't seem right. And then it seemed like one of [her] keys was missing." Thereafter, John Burgen notified her that defendant had acknowledged to him that he had taken a house key. Plaintiff testified that knowing defendant had the key caused her great fear.[5]

Notwithstanding the fact that the plaintiff blocked defendant's mobile phone number, email, and everything else she could control, defendant "continue[d] to find new ways of contacting" her. On January 4, 2013, he began to guess plaintiff's new email addresses to send her emails. Since March 2013, defendant had contacted her on average, weekly. On March 16, 2013, he sent a gift to plaintiff's parents' home. On May 10, 2013, defendant telephoned plaintiff and left a "very odd message." On June 16, 2013, defendant wrote plaintiff a seven-page handwritten letter. On approximately June 15, 2013, plaintiff blocked defendant's cellular phone, and on June 19, 2013, she received a message indicating a text had been blocked. On June 21, 2013, defendant emailed plaintiff's father, asking him to forward a message to plaintiff. On June 28, defendant managed to deliver a text message to plaintiff via his email. He also sent her a text message from his mother's phone on July 4, 2013. On July 13, 2013, defendant sent plaintiff an expensive gift. On July 22, 2013, he sent her another text message. On July 31, 2013, defendant correctly guessed another of plaintiff's email addresses, and

_____

[5] Plaintiff also testified concerning the reasons she requested that the restraining order protect her two named nieces.

6

successfully sent another message to her. At that time, plaintiff felt that the situation was not going to end, and she felt that defendant was "hunting [her] down." On August 5, 2013, defendant sent her an email that stated, among other things, "Isn't there any bit of you that still is wanting to fight for us?"[6] Plaintiff testified that after he was served with the temporary restraining order, defendant urged a friend to talk to plaintiff and ask her to withdraw her request for a restraining order.

Based on the evidence presented by plaintiff, the court concluded that the issuance of a domestic violence restraining order would be appropriate. On August 28, 2013, the trial court issued a three-year restraining order, to expire on August 28, 2016. The order directed defendant, among other things, to stay away from plaintiff and her two named nieces, and to refrain from harassing them.

## DISCUSSION

### I. Waiver of Personal Jurisdiction

Defendant contends that the trial court did not have personal jurisdiction over him because he was living in Texas at the time this proceeding was commenced and at the time of the hearing. However, because he failed to properly move to quash service, defendant waived his challenge to the trial court's exercise of jurisdiction over him.

Code of Civil Procedure section 418.10 governs the procedures for, inter alia, filing a motion to quash service of a summons on the ground of lack of jurisdiction (Code Civ. Proc., § 418.10, subd. (a)(1).). That section provides that the notice of motion "shall designate, as the time for making the motion, a date not more than 30 days after filing of the notice." (Code Civ. Proc., § 418.10, subd. (b).) "Failure to make a motion to quash constitutes a waiver of the issues of lack of personal jurisdiction, inadequacy of process,

---

[6] With the court's permission, the plaintiff read the substance of additional emails defendant sent her into the record. The actual emails were not admitted into evidence, but the substance of these emails is not strictly relevant to the issues presented on this appeal.

7

inadequacy of service of process, inconvenient forum, and delay in prosecution." (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 680 (*Horspool*), citing Code Civ. Proc., § 418.10, subd. (e)(3).)

As will be discussed *post*, defendant's opposition papers were not filed in compliance with local court rules. Further, in his papers, defendant did not explicitly seek to quash service of the summons on the ground of lack of jurisdiction. Moreover, the papers failed to designate a date as the time for making the motion as required by Code of Civil Procedure section 418.10, subdivision (b). Thus, defendant failed to move to quash in compliance with Code of Civil Procedure section 418.10, and, as a result, he waived, among other things, the issue of lack of personal jurisdiction. (See Code Civ. Proc., § 418.10, subd. (e)(3); *Horspool*, *supra*, 223 Cal.App.4th at p. 680.)

## II.   Issuance of the Restraining Order

### A. Statutory Background and Standard of Review

"Under the DVPA, the trial court may issue an order 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.'" (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782, quoting § 6300.) The DVPA's definition of abuse includes, among other things, "[t]o engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(4)), and specifies that the definition of abuse "is not limited to the actual infliction of physical injury or assault." (§ 6203, subd. (b).) Behavior that may be enjoined pursuant to section 6320 includes "stalking, threatening . . . , *harassing*, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, *contacting, either directly or indirectly, by mail or otherwise*, coming within a specified distance of, or *disturbing the peace of the other party* . . . ." (§ 6320, subd. (a), italics added.) On appeal, we review the trial court's

8

issuance of a restraining order pursuant to the DVPA for abuse of discretion. (*Nevarez*, at p. 782; *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333.)

## B. Claimed Failure or Refusal to Consider Opposition Papers

Defendant claims that the trial court improperly failed or declined to consider his opposition papers, in which, in addition to raising objections to the exercise of jurisdiction over him, he addressed the merits of plaintiff's claims. Assuming the judge ever saw defendant's untimely opposition papers, it would have been proper to decline consideration of them because the way in which defendant attempted to file them was in violation of the local rules of court.

Under Government Code section 68070, with certain limitations not relevant here, "[e]very court may make rules for its own government and the government of its officers not inconsistent with law or with the rules adopted and prescribed by the Judicial Council." (Gov. Code, § 68070, subd. (a).) "As the California Supreme Court explained in . . . *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 [63 Cal.Rptr.3d 483, 163 P.3d 160] (*Elkins*), 'trial courts possess inherent rulemaking authority as well as rulemaking authority granted by statute. [Citations.] "It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] . . . '. . . That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice. [Citation.]' " [Citation.]' " (*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 895-896.) Thus, a local court rule has the effect of a procedural statute (*Shipp v. Superior Court* (1992) 5 Cal.App.4th 147, 151), provided it does not conflict with the California Constitution, statutory or case law, or rules adopted by the Judicial Council. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967-968; *Woolsey*, at p. 896.) A litigant's failure to comply with local court rules may properly result in a court's refusal to consider the litigant's position. (See *People v. Lewis* (1977) 71 Cal.App.3d 817.)

9

Here, defendant submitted his opposition papers to the trial court by fax. However, pursuant to local rule, the El Dorado County Superior Court "does not accept fax filing . . . for family law restraining orders." (Super. Ct. El Dorado County, Local Rules, rule 4.00.09.) Thus, defendant's submissions failed to comply with the local rules, and, accordingly, it would not have been improper for the trial court to decline to consider defendant's opposition papers.

## C. Harmless Error

In any event, we conclude that any error in failing to consider defendant's opposition papers was harmless. "Before any judgment can be reversed for ordinary error, it must appear that the error complained of 'has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) Reversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *see* 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Reversible Error, § 7, p. 450.) A reasonable probability for these purposes does not mean an *absolute* probability; the likelihood that the error affected the outcome need not be greater than the likelihood that it did not. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 [34 Cal.Rptr.2d 898, 882 P.2d 894].) The test is satisfied, and prejudice appears, if the case presents 'an equal balance of reasonable probabilities.' (*People v. Watson*, *supra*, 46 Cal.2d at p. 837.)" (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078-1079.)

In his papers, defendant acknowledged that he continued to contact the plaintiff until he "gave up for good on August 9, 2013, when [he] got a call from an El Dorado sheriff." This was one week prior to the date on which the plaintiff requested a restraining order. Defendant denied that he stole a copy of the plaintiff's house key. However, he did not deny frequently contacting the plaintiff by mail, email, text message, telephone, and other means after plaintiff told him not to contact her, although he

10

characterized his messages as "non-threatening." Even if the allegations of threats and/or violence were not considered, these unilateral, unwanted and harassing contacts supported the issuance of the domestic violence restraining order.

Based on the foregoing, we conclude that there is no reasonable probability that, if the court had considered defendant's opposition papers, it would have reached a result more favorable to him. Accordingly, any error in failing or declining to consider defendant's opposition papers was harmless.

## DISPOSITION

The court's issuance of a three-year restraining order is affirmed, and plaintiff shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


     MURRAY     , J.

We concur:


   NICHOLSON   , Acting P. J.


   HOCH   , J.

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

----

| | |
|---|---|
| JENNIFER KATHARINE SABATO, | C075028 |
| Plaintiff and Respondent, | (Super. Ct. No. PFL20130584) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| GERALD AUSTIN BROOKS, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of El Dorado County, Nelson Keith Brooks, Judge. Affirmed.

Sucherman Insalaco LLP, Michelene Insalaco, Family Violence Appellate Project, Jennafer Dorfman Wagner, Nancy K.D. Lemon, and Shuray Ghorishi for Plaintiff and Respondent.

Gerald Austin Brooks, in pro. per., for Defendant and Appellant.

THE COURT:

The opinion in the above entitled matter filed on October 30, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in full in the Official Reports and it is so ordered. There is no change in judgment.

FOR THE COURT:


     NICHOLSON     , Acting P. J.


     MURRAY     , J.


     HOCH     , J.