Filed 10/5/16  Zozula v. Zozula CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| KAITLIN ZOZULA,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ALICIA ZOZULA,<br><br>        Defendant and Appellant. | B259853<br><br>(Los Angeles County<br>Super. Ct. No. NQ019841) |

        APPEAL from an order of the Superior Court of Los Angeles County, Ana Maria Luna, Judge.  Affirmed.

        Alicia Zozula, in pro. per., for Defendant and Appellant.

        No appearance for Plaintiff and Respondent.

_____

## INTRODUCTION

Kaitlin Zozula filed a petition seeking a domestic violence restraining order (DVRO) against her mother Alicia Zozula.[1]  After a hearing pursuant to the Domestic Violence Prevention Act (DVPA; Fam. Code,[2] § 6200 et seq.), the trial court granted the petition and issued the order.  Alicia appeals, arguing the trial court abused its discretion in granting the petition as she refuted all of Kaitlin's allegations.  Because substantial evidence supports the trial court's issuance of the DVRO, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2014, Kaitlin filed a petition for a DVRO against Alicia, seeking personal conduct and stay-away orders protecting herself and her six-year-old son Cash from Alicia.  In her supporting declaration, Kaitlin said she had asked her mother on April 16 to leave her home (where Alicia had been living) because Alicia had come home drunk the night before, after driving Kaitlin's car into a "pole/wall."  Because of Alicia's "long history of alcohol abuse" and "the abuse [she (Kaitlin) had] endured growing up," Kaitlin said she knew she needed to protect her son.  When Alicia asked to see Cash, Kaitlin told her she would need to attend "AA" (Alcoholics Anonymous) first.

Alicia then began texting, telling Kaitlin if she did not let Alicia see Cash, she would "fight 'tooth and nail to see him'" and would "make it happen."  Although Kaitlin had removed Alicia from Cash's emergency card at school, Alicia had attempted to take Cash out of school, had shown up at his school functions, waited outside his school and followed Kaitlin and Cash as they walked home, threatening "she would get Cash from [Kaitlin]."  Alicia had also shown up at Kaitlin's house and attempted to get in when she

---

[1]     Because the parties have the same last name, we refer to them by their first names.

[2]     All statutory references are to the Family Code.

knew Kaitlin would not be home, but Kaitlin had changed the locks. Kaitlin said she was "terrified for [her]self and Cash" and was looking for a place to move.

On June 25, Alicia filed her response to Kaitlin's petition, arguing Kaitlin had presented no evidence. She asserted, instead, that Alicia was the "victim of threat and harassment by [Kaitlin]." Alicia requested a custody order for visitation with her grandson on his birthday, holidays and "twice a month on a regular basis."

On June 27, the trial court conducted an evidentiary hearing during which both Kaitlin and Alicia testified. At the beginning of the hearing on Kaitlin's petition, the trial court emphasized the issue before the court was Kaitlin's request for a DVRO, not whether Alicia, as Cash's grandmother, should be granted visitation, which it stated was for another court to decide.

Kaitlin told the trial court Alicia had lived with her for a few years. According to Kaitlin, Alicia had been laid off and had undergone heart surgery. Kaitlin took care of Alicia's bills. Kaitlin had asked Alicia to help care for Cash while Kaitlin attended nursing school and worked nights. During that time, there had not been any problem with Alicia drinking.

On the morning of April 16, however, Kaitlin told her mother she had to leave because Alicia had come home intoxicated the night before. Further, when Kaitlin walked out to her car, she saw that Alicia had driven Kaitlin's car and had damaged the car in an accident. Alicia left, taking some of her belongings to her brother's house.

Later that same day, Alicia sent Kaitlin a text message demanding to speak with Cash. In the text message, Alicia "promise[d]" she would contact "Social Services" if she did not speak with him "soon," and further stated, "you will not keep me from Cash." In response, Kaitlin sent a text recounting events from her childhood when Alicia was drinking.[3] She told Alicia that if she attended AA and was sober for six months, she

---

[3]     According to the reporter's transcript, Kaitlin presented copies of these text messages, but they are not included in the appellate record. The trial court read some of the text messages into the record, however, and summarized others as noted above.

3

would "be in [Kaitlin and Cash's] lives again," "but right now," Alicia "need[ed] to leave [them] both alone."

On April 20, Alicia texted again, asking to speak with Cash. When Kaitlin said no, Alicia texted: "Expect to hear from Social Services." "You better have him call me. . . . I want to see my Cash. . . . You will regret it."

On April 26, Alicia came to Kaitlin's apartment "unannounced" with Alicia's brother, his wife and their son (with a truck) to pick up the rest of her belongings. Kaitlin let them in, and, as of that date, everything of Alicia's was out of Kaitlin's home.

Then on May 13, although she had no reason to return, Alicia went back to the apartment. She knew Kaitlin would be at school and tried to get in, but Kaitlin had changed the locks. Kaitlin's boyfriend Evan was home. Alicia started calling him. Kaitlin had told Evan not to let Alicia in, so he did not respond. Alicia eventually left.

A few days later, Alicia showed up at Cash's school. Kaitlin said she had called the school office to remove Alicia's name from Cash's emergency card, but the person with whom she spoke had not removed Alicia's name. The principal told Kaitlin Alicia had threatened to call the police and "make a big scene" so she arranged for Cash to see Alicia in a separate room. Afterward, Cash told Kaitlin Alicia had told him to keep her visit a secret and not to tell Kaitlin.[4]

Later, the principal at Cash's school notified Kaitlin that Alicia had been asking about "Beach Day," a school event planned for June 6. When Kaitlin's boyfriend Evan arrived at the event, he saw Alicia with Cash. He asked her to leave, but she refused. Then the principal asked Alicia to leave because she was no longer on Cash's emergency card. Alicia eventually left.

---

[4]     Alicia testified she had several such visits at Cash's school (which she videotaped) without Kaitlin's knowledge. When the trial court asked about the disruption to Cash's school day, she said she "only spen[t] half of his lunch period with him" before sending "him back to play with his friends."

Kaitlin arrived later to walk Cash home with Evan. As they passed Cash's school, she saw that Alicia was there and asked her to leave them alone. When Alicia started talking to them, Kaitlin again asked her to leave them alone and started to cross the street. Alicia followed them across the street and said she was contacting Cash's biological father Anthony (Kaitlin's ex-husband) as another "tactic" to "get to [Kaitlin]" about a "very terrifying time in her life." Kaitlin testified she had pursued criminal charges against Anthony and had a restraining order against him because he had "put [her] in the hospital with a skull fracture."[5] Raising her voice, she told Alicia to leave, and she finally did. Kaitlin reported these events to the police but was told it was better to get a restraining order.[6]

According to Alicia, Kaitlin had only asked her to leave for a few days on April 16 and then "wrongfully evicted" her. She acknowledged the lease was in Kaitlin's name but said she had cared for Kaitlin and Cash "out of love and concern without any pay except room and board." In her own declaration, however, Alicia admitted Kaitlin told her before May 13 she would have to attend AA before she could return.

Alicia testified she had contacted the Department of Children and Family Services (Department) out of concern for Cash's safety to report that she had been told Cash had walked to school by himself on May 13, 2014. Kaitlin told the trial court Cash "never walked alone" and that Cash told the social worker he never walked alone. Kaitlin also challenged Alicia's claim she was concerned, noting Alicia had waited three weeks after purportedly hearing Cash had walked alone to contact the Department.

In response to the trial court's questions, Alicia acknowledged she did not communicate her concern about Cash walking alone to Kaitlin on the day it supposedly

---

[5] In her responsive declaration, Alicia said she saw the bruising on Kaitlin's body while she was married to Cash's father Anthony and said she cared for Kaitlin after "one of the episode[s of his] attack[s]" put Kaitlin in the emergency room.

[6] Kaitlin's request for a temporary restraining order against Alicia was granted on June 9.

occurred and did not dispute the timing of her report to the Department. Alicia testified her "motivation" in contacting the Department was "because [she] had said [she] was going to." She "didn't want it to sound like [she] was continually threatening [Kaitlin]" without following through so, as the trial court observed, she "carried out on the threat."

The trial court granted Kaitlin's petition, finding Alicia's conduct in (1) "coming to the apartment unannounced two weeks after she had been there to gather her things"; (2) "coming to the child's school"; and (3) "the encounter with [Kaitlin] after the Beach Day" supported the issuance of a DVRO for a three-year period.

Alicia filed a timely appeal.[7]

## DISCUSSION

A.    *Governing Law and Standard of Review*

The DVPA permits the trial court to issue a protective order to restrain any person for the purpose of preventing a recurrence of domestic violence[8] and ensuring a period of "separation of the persons involved" (§ 6220) upon "reasonable proof of a past act or acts of abuse" (§ 6300). (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782.) The DVPA's definition of "'abuse'" includes, "among other things, '[t]o engage in any behavior that has been or could be enjoined

---

[7]    Because there is no proof of service of the June 27, 2014 order, Alicia's notice of appeal filed on October 31, 2014 (126 days later), is timely. (Cal. Rules of Court, rule 8.104(a)(1) [a notice of appeal must be filed within 60 days after service of a notice of entry of judgment or a file-stamped copy of the judgment, but if there is no proof of service, the notice of appeal must be filed within 180 days after entry of the judgment]; rule 8.104(e) ["judgment" includes appealable order]; *In re Marriage of Lin* (2014) 225 Cal.App.4th 471, 474-476 [§ 6384, subd. (a), may obviate the need for service of a DVRO for enforcement purposes, but it has no impact upon the service requirement to shorten the time to appeal from 180 days to 60 days].)

[8]    As applicable here, "'Domestic violence'" includes abuse perpetrated against a cohabitant or former cohabitant (§ 6209) or any other person related by consanguinity or affinity within the second degree. (§ 6211, subds. (b) & (f).)

6

pursuant to [s]ection 6320.'"  (*Sabato v. Brooks* (2015) 242 Cal.App.4th 715, 723, quoting § 6203, subd. (a)(4).)  Behavior that may be enjoined under section 6320 includes "stalking, threatening, . . . harassing, telephoning, . . . destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (§ 6320, subd. (a); see also *Rodriguez*, *supra*, at p. 820 [abuse under the DVPA includes acts that "'destroy[] the mental or emotional calm of the other party'"].)

We review the trial court's issuance of a restraining order under the DVPA for abuse of discretion.  (*Sabato v. Brooks*, *supra*, 242 Cal.App.4th at p. 723; *Nevarez v. Tonna*, *supra*, 227 Cal.App.4th at p. 782.)  In applying this deferential standard, we review the record to determine whether the trial court's ruling is supported by substantial evidence.  (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.)  Our review presumes that all factual disputes were resolved in the prevailing party's favor, unless the trial court indicated otherwise.  (*Ibid.*)

B.     *Substantial Evidence Supports the Trial Court's Issuance of the DVRO*

Kaitlin testified that, after she told her mother she did not want Alicia to contact her or Cash, Alicia returned to Kaitlin's apartment unannounced during a time when she knew Kaitlin was at school, even though Alicia had already taken all of her belongings and had no reason to return to the apartment.  Alicia also went to Cash's school and threatened the principal that she would call the police and "make a big scene" if she was not allowed to see Cash.  She then told Cash not to tell Kaitlin about the visit. Additionally, Alicia attended and had to be asked to leave Cash's Beach Day and then tried to talk with and followed Kaitlin and Cash as Kaitlin tried to get them both away from her.  On this record, Kaitlin presented substantial evidence that Alicia's conduct disturbed Kaitlin's (and Cash's) peace.  (See *Burquet v. Brumbaugh*, *supra*, 223 Cal.App.4th at p. 1147 [unannounced and uninvited visit and repeated contacts by phone, e-mail, and text, despite requests of no contact, "disturbed the peace" and constituted

7

"'abuse'" within the meaning of § 6320].)  Because such conduct constitutes "'abuse'" within the meaning of the DVPA, the trial court did not abuse its discretion in granting the petition and issuing the restraining order against Alicia.  (*Ibid.*)

Citing *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249 (*S.M.*), Alicia argues the restraining order should not have been granted because there was no evidence she attempted to cause bodily injury or placed Kaitlin or Cash in apprehension of imminent serious bodily injury.  However, the conduct prescribed by section 6203 is not limited to conduct that causes injury or apprehension of serious bodily injury.  Rather, it includes harassing conduct and incorporates in its definition conduct that disturbs the peace of the other party.

Further, Alicia's reliance on *S.M.* is misplaced.  In *S.M.*, the father challenged a six-month restraining order that was issued after a single incident during which he and the mother of his minor child had argued over his refusal to give the mother permission to take the child out of the state.  (*S.M.*, *supra*, 184 Cal.App.4th at pp. 1255, 1261.)  The appellate court considered whether the father's conduct, as determined by the trial court, rose to the level of abuse under the DVPA.  In so doing, the appellate court noted the trial court had specifically declined to find the father had threatened the mother during the argument and found he had only "'badger[ed]'" her.  (*Id.* at pp. 1265-1266.)  It also noted that the trial court had not made any finding that the father's conduct rose to the level of harassment or abuse and that the trial court had attempted to limit the legal effect of the restraining order so as not to affect the father's custody or visitation rights.  (*Id.* at pp. 1266-1267.)  The appellate court concluded the trial court had abused its discretion in issuing the restraining order because the record demonstrated the trial court did not believe the father's conduct placed the mother in reasonable fear of serious bodily injury or involved behavior that may be enjoined under section 6320.  (*Id.* at p. 1265.)

Here, unlike in *S.M.*, the trial court found Alicia's conduct of coming to Kaitlin's apartment unannounced and attempting to gain entry after having already removed all of her belongings, going to Cash's school and threatening to make a scene, and showing up on Cash's Beach Day and refusing to leave was conduct that rose to the level of abuse

8

under the DVPA. Moreover, substantial evidence in the record supported the trial court's conclusion. (See *Burquet v. Brumbaugh*, *supra*, 223 Cal.App.4th at p. 1146 [a court may issue an order under the DVPA enjoining a party from "'disturbing the peace of the other party'"].) "Annoying and harassing an individual is protected in the same way as physical abuse." (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 398; see *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290-1291 ["protective orders can be issued because of persistent unwanted phone calls or letters—which fall into the same category as 'molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, [or] harassing' the protected party"]; see also *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1425, fn. 8 [As of Jan. 1, 2015, "the DVPA now specifically provides that '[a]buse is not limited to the actual infliction of physical injury or assault.' (§ 6203, subd. (b), as amended by Stats. 2014, ch. 635, § 2.)"].)

Alicia's argument that her "wrongful eviction" constitutes "a defense to the domestic violence claim" is also meritless. As already discussed, the DVPA expressly applies to "cohabitant[s]" (§ 6211, subd. (b)), and its purpose is to prevent the recurrence of domestic violence and to ensure the separation of the persons involved (*Rodriguez v. Menjivar*, *supra*, 243 Cal.App.4th at p. 820; *Nevarez v. Tonna*, *supra*, 227 Cal.App.4th at p. 782), not to resolve tenancy disputes.[9] Accordingly, the trial court properly considered Alicia's conduct in returning to and attempting to gain access to the apartment on May 13, 2014, after she had already moved out and had taken all of her belongings. Any legal claim she may have had to possession of the premises as a tenant was for another proceeding.

---

9       Indeed, pursuant to section 6321, subdivision (a), the court may issue an order excluding a party from the common dwelling of both parties "regardless of which party holds legal or equitable title or is the lessee of the dwelling" if the court finds physical or emotional harm would otherwise result to the other party or to a minor child of the other party (§ 6340, subd. (c)).

Finally, in arguing she "refuted" the grounds for the trial court's decision, Alicia merely advances her version of events.[10]  The trial court was in the best position to evaluate credibility and to resolve factual disputes.  (*In re Marriage of Evilsizor & Sweeney*, *supra*, 237 Cal.App.4th at p. 1426.)  Kaitlin's testimony was not "'inherently improbable or incredible'" such that we may reject the trial court's determination of her credibility on appeal.  (*Nevarez v. Tonna*, *supra*, 227 Cal.App.4th at p. 786.)

## DISPOSITION

The order is affirmed.  Alicia is to bear her own costs on appeal.

GARNETT, J.[*]

We concur:

PERLUSS, P. J.                    ZELON, J.

---

[10]    To the extent Alicia raises hearsay and other evidentiary objections never presented in the trial court, she has forfeited them.  (*Nevarez v. Tonna*, *supra*, 227 Cal.App.4th at p. 785.)  In any event, we note that Kaitlin's boyfriend Evan was waiting outside the courtroom to testify on her behalf, and no documentary or corroborating evidence was required.  (§ 6300 ["The court may issue an order under this part based solely on the affidavit or testimony of the person requesting the restraining order."].)  Indeed, although she argues her conduct does not satisfy the DVPA, she essentially acknowledges the conduct itself.  (*Sabato v. Brooks*, *supra*, 242 Cal.App.4th at p. 725 [unilateral, unwanted and harassing contacts supported the issuance of domestic violence order].)

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.