Filed 11/15/21 (see dissenting opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re S.G. et al., Persons Coming Under the Juvenile Court Law. | B307988<br>(Los Angeles County<br>Super. Ct. No. 20CCJP00090) |

LOS ANGELES COUNTY
DEPARTMENT OF CHILDREN
AND FAMILY SERVICES,

      Plaintiff,

      v.

J.C.,

      Defendant and Appellant;

R.G.,

      Defendant and Respondent.

      APPEAL from an order of the Superior Court of
Los Angeles County, Emma Castro, Judge Pro Tempore.
Affirmed.

      Caitlin Christian, under appointment by the Court of
Appeal, for Defendant and Appellant J.C.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Respondent R.G.

---

      J.C. (Mother) filed a timely appeal from the juvenile court's denial of her request for a permanent restraining order protecting her from R.G. (Father).  While Mother's appeal was pending, the juvenile court terminated jurisdiction in an order from which Mother did not appeal.

      We hold that Mother's failure to appeal the termination of juvenile court jurisdiction does not render Mother's restraining order appeal moot.  In so holding, we disagree with certain cases to the extent they stand for the broad proposition that an appellate court can never grant effective relief in a dependency appeal following the unappealed termination of juvenile court jurisdiction.  Here, were we to conclude the juvenile court's denial of Mother's restraining order request constitutes reversible error and direct the court to issue the restraining order, our remittitur would vest jurisdiction in the juvenile court for the limited purpose of correcting that error.  Correcting an erroneous denial of Mother's restraining order request would immediately afford Mother effective relief.  Mother's appeal is therefore not moot.

      As to the merits, we hold that the court did not abuse its discretion in denying Mother's requested restraining order because the evidence does not compel the conclusion that Mother's safety would be in jeopardy without such an order.  Nor do we agree with Mother that the juvenile court applied an incorrect legal standard in ruling on her request.  Even assuming the court did so err, however, such error would not warrant

reversal because it is not reasonably probable that Mother would have obtained a more favorable result under the correct standard.

Accordingly, we affirm

**FACTUAL AND PROCEDURAL SUMMARY**

### A.    *Background*

Mother and Father ended their relationship in 2011, when their older daughter, S.G., was one year old, and Mother was still pregnant with their younger daughter, L.C.  They "agree that their relationship was unhealthy or dysfunctional."  In a May 2011 referral, Mother alleged that Father emotionally abused unborn L.C. when "Father attacked [Mother] and hit . . . her pregnant stomach."  Los Angeles County Department of Children and Family Services (DCFS) closed the referral as unfounded because "there was no evident injury."  A 2012 family court order granted Mother and Father joint legal and physical custody of the children.

In the years that followed, Mother and Father repeatedly accused each other of various forms of misconduct through referrals to DCFS, all of which DCFS deemed unfounded or inconclusive.  These include:  February 2012 and November 2012 referrals in which Father alleged general neglect by Mother, both of which DCFS deemed unfounded; a November 2012 referral in which Mother alleged physical abuse by Father that was deemed unfounded; a November 2015 referral in which Mother alleged emotional and physical abuse by Father that was deemed unfounded; February 2016 and December 2016 referrals in which Mother alleged general neglect and sexual abuse by Father, both of which DCFS again deemed unfounded; and a November 2017

3

referral by Father alleging general neglect by Mother that was deemed inconclusive.

Mother and Father also accused each other of various types of wrongdoing in their requests to the family court during custody proceedings. In September 2016, Father requested Mother's custodial time be reduced based on allegations that she was not taking the children to school and was withholding the children from him. Less than two weeks later, Mother obtained a temporary restraining order against Father based on allegations that he was "aggressive" during custodial exchanges and that he had withheld the children from her. In December 2016, Mother sought another temporary restraining order and to have Father's custody reduced based on allegations that he may have sexually abused S.G. In January 2017, the family court found the allegations were untrue, denied the restraining order request, and modified the custody order to name Father as the primary custodial parent. The parents were ordered to attend parenting classes, communicate through Talking Parents (an online co-parenting communication tool), and obtain counseling for the children.

Between 2010 and 2020, Mother filed approximately 13 requests in family court for restraining orders against Father. Some of these resulted in the family court granting a temporary order, often on an ex parte basis, but the court always denied corresponding requests for permanent orders after an evidentiary hearing. Our record does not contain details regarding the bases for any of these requests, except the 2016 request discussed above and the 2019 request discussed below.

### B. *Mother's November 2019 Request for a Restraining Order*

In November 2019, Mother filed in the family court a request for a restraining order protecting both her and the children from Father. As support for her request for an order protecting her,[1] Mother claimed that Father "consistently sen[t] [her] messages via TP (Talking Parents) to intimidate [and] scare [her]," such as telling her he "had obtained new access to [her] driving record" and criticized her for having been at certain locations. Mother indicated that Father refused to explain how he had obtained this information, and that this "invasion of [her] privacy terrified her."

She also described an October 7, 2019 incident that occurred after Mother took S.G. home from school because S.G. was ill and Father could not be reached. According to Mother, Father came to her home, yelling and using profanity, and "bang[ed]" on the windows and doors. L.C. was in Father's car while this occurred. Mother indicated she was in the restroom when Father arrived and was "scared [and] confused." Father called the police, who came to the scene, but took no further action. The children remained with Mother after the police left.

The family court granted a temporary restraining order and set a hearing on the request for permanent orders.

---

[1] Because Mother challenges only the denial of a restraining order protecting her, not the denial of a restraining order protecting the children, we do not summarize the basis on which Mother requested an order protecting the children.

## C.    *Initiation of Dependency Proceedings*

Before the family court could hear the request for a permanent restraining order, DCFS filed a petition under Welfare and Institutions Code section 300.[2]

## D.    *Mother's Renewed Restraining Order Request*

All parties agreed to extend the family court's November 2019 temporary protective order until the juvenile court held a hearing on the permanent restraining order.  The juvenile court required Mother to file a renewed request, in which she incorporated by reference her November 2019 restraining order request filed in the family court, as well as DCFS's detention report.

The detention report included statements by Mother that Father had been "verbally and physically abusive towards her" in the past.  Specifically, she told social workers that Father had " 'called her everything from here to the moon,' " that " 'he also punched [her] when [she] was pregnant with [L.C.],' "[3] and that "there was a past fight in 2015 when . . . [F]ather got physical with her and they were both arrested for the incident."

The detention report also listed the family's referral history and indicated that both parents have some criminal history related to domestic violence, although it does not indicate (nor does the record elsewhere clarify) whether this history involved arrests or convictions.  Specifically, the report notes

---

[2] Unless otherwise indicated, all further statutory references and citations are to the Welfare and Institutions Code.

[3] The timing and details of Mother's statement in this regard appear to correspond to her 2011 referral, which DCFS deemed unfounded.

6

that "[F]ather has [a] criminal history regarding disorderly conduct: . . . battery of [a] spouse on [October 26, 2015] and inflict[ing] corporal injury on [a] spouse/cohabitant on [May 13, 2011]. [¶] Mother has [a] criminal history regarding battery of [a] spouse on [October 26, 2015 and] battery on [a] person on [November 18, 2015]."[4]

When interviewed by DCFS about the October 2019 incident, S.G. stated that "on a Monday this year," " 'daddy came to mommy's house screaming and banging on her door . . . like the police and kicking on the door and windows.' " L.C. similarly described the incident as having " 'happened on a Monday when [S.G.] stayed at mommy's house sick.' " L.C. stated that " 'daddy came to mommy's house' . . . [and] 'daddy was banging on the door and yelling and saying bad words.' " In a subsequent interview, L.C. further stated that, during the incident, " 'daddy was trying to get a bat in his car' " and that " 'he held it, but let it go' " while he was " 'sitting in the backseat of . . . [Father's] car, and mommy was looking out from her door.' " The report included interviews with Father, in which he denied the incident occurred as Mother and the children described it, and stated instead that he knocked on the door, and claimed that the children were being coached by their mother to describe the incident differently.

---

[4] Mother indicated in her DCFS interviews that she was arrested in 2015 both for fighting with Father, and for fighting with an ex-boyfriend. This suggests the parents' October 2015 arrests involved the 2015 fight with Father that Mother referenced, whereas Mother's November 2015 arrest was for fighting with a third party.

The detention report also included statements by S.G. that " 'one time daddy hit mommy around 2014 or 2015,' " that " 'mommy was bleeding and crying, and he pushed her one time when she was pregnant.' "

**E.** ***Hearing on Jurisdiction, Disposition, and Mother's Restraining Order Request***

Because of the COVID-19 pandemic, hearings on Mother's request for a restraining order and jurisdiction and disposition were continued and did not begin until September 9, 2020.

The court conducted the jurisdiction and restraining order hearings together. Both parents testified. When the court asked Mother if Father had violated the November 2019 protective order, she initially testified that Father had done so "when [he] appeared at my property," but later clarified that Father was actually in his vehicle on a public street "near [her] driveway." Father testified regarding Mother's previous restraining order requests.

In reaching its decision denying Mother's request for a permanent restraining order, the court stated that it considered the allegations in the request, the exhibits and testimony, and the family law file. The exhibits included the DCFS jurisdiction/disposition report, in which DCFS noted the family's "on-going custody dispute," and told the court: "This family has extensive child welfare referral history with a very specific pattern of the parents calling in referrals on one another related to parenting issues, and appears to be rooted in their custody dispute." The family law file included two 2017 "statement[s] of issues and contentions" filed by the children's appointed counsel in family court pursuant to Family Code section 3151, subdivision (b). In these statements, the children's counsel

8

explained his view, similar to that of DCFS, that "the parties' numerous complaints about each other" were "all . . . without merit . . . [and] each parent is looking for anything negative about the other to obtain some sort of advantage in these custody proceedings." (Underscoring omitted.) The children's counsel further noted that, when he interviewed the children, they appeared to be " 'par[ro]ting' " Mother, in that they "provided [the children's] counsel a blow-by[-]blow history of this case that they would have never been able to communicate to [the children's] counsel (let alone remember) but for [Mother] prepping them prior to the interview." According to [the children's] counsel, the "children inasmuch as confirmed during the interview process that their mother wanted specific issues discussed and how to answer the same."

The court denied Mother's request for the permanent restraining order. Specifically, the court "[found] insufficient evidence, certainly, not by a preponderance of the evidence to show that Mother and/or the children are at risk of any threats or actual physical violence by . . . Father towards either the mother or the children." The court did, however, grant Mother's alternative request for a mutual stay-away order, requiring that "[n]either Mother nor Father are to be within 100 yards of one another or their home or their job."

The court then found that the children were persons described in section 300, subdivision (c) based on allegations that both parents' conduct in their ongoing custody dispute was harming the children emotionally. The court dismissed all other counts in the petition. The court found "Mother to be acting in bad faith" based not only on "the evidence that ha[d] been

9

presented by DCFS," but also on "the entirety of the family court proceedings for the last eight years."

### F. *Appeal and Post-appeal Developments*

Mother filed a timely notice of appeal from the court's jurisdiction and disposition orders, as well as the August 28, 2020 order denying her request for a permanent restraining order. On appeal, however, she challenges only the court's denial of a permanent restraining order protecting her from Father.

In a May 5, 2021 order, issued while this appeal was pending, the juvenile court terminated jurisdiction and granted the parents joint legal and physical custody of both children. No party has sought review of the order.

At the request of this court, Mother and Father each filed a supplemental brief regarding whether the juvenile court's termination of jurisdiction mooted Mother's appeal.[5]

---

[5] DCFS is not a party to this appeal, and accordingly neither filed a respondent's brief, nor took a position regarding whether termination of jurisdiction over the children rendered Mother's appeal moot.

# DISCUSSION

## A. *Mootness and the Termination of Juvenile Court Jurisdiction*

In arguing Mother's appeal is moot, Father cites a "general rule" tying mootness of a dependency appeal to the unappealed termination of juvenile court jurisdiction. (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488 (*C.C.*), citing *In re Michelle M.* (1992) 8 Cal.App.4th 326, 330 (*Michelle M.*).) Although the termination of juvenile court jurisdiction can, under certain circumstances, render an appeal from a prior juvenile court order moot, we disagree that a necessary association exists between the two. In this section, we lay out what we view as the correct framework for assessing mootness under such circumstances, and how we reconcile that framework with existing case law. In the following section (see Discussion part B, *post*), we apply the framework to Mother's appeal.

### 1. *Mootness depends on our ability to grant effective relief*

Mootness in the dependency context—as in any context—depends on "whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60 (*N.S.*); accord, *In re E.T.* (2013) 217 Cal.App.4th 426, 436 ["[a]n appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief"].) The termination of juvenile court jurisdiction does not categorically prevent a reviewing court from granting effective relief in all cases. Thus, mootness of an appeal from a juvenile court order followed by the unappealed termination of juvenile court jurisdiction "must be decided on a case-by-case basis" (*In re*

11

*Kristin B.* (1986) 187 Cal.App.3d 596, 605; accord, *C.C., supra*, 172 Cal.App.4th at p. 1488), and such termination will not moot an appeal if, on the facts of the particular case, the appellate court can still grant the appellant effective relief.

### 2. *Termination of juvenile court jurisdiction does not categorically prevent a reviewing court from providing effective relief*

Code of Civil Procedure sections 43 and 906 both provide that a reviewing court "may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." Neither statute qualifies a reviewing court's power to instruct a lower court to enter a new order or hold further proceedings. That power applies equally to the review of juvenile court decisions, and does not depend on the juvenile court retaining jurisdiction, because "[t]he order of the reviewing court . . . contained in its remittitur . . . defines the scope of the jurisdiction of the court to which the matter is returned." (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1499; see *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 ["When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court."]; *In re Francisco W.* (2006) 139 Cal.App.4th 695, 704–705 (*Francisco W.*) ["[w]hen a judgment is reversed with directions, the appellate court's order is contained in its remittitur, which revests the jurisdiction of the subject matter in the lower court and defines the scope of the lower court's jurisdiction"].)

Put differently, the remittitur creates the limited jurisdiction needed for a juvenile court to correct reversible errors found by an appellate court. Thus, even after a juvenile court has terminated jurisdiction, a reviewing court can still effectively require the juvenile court to correct reversible error.

### 3. *Cases reciting a rule that the unappealed termination of juvenile court jurisdiction renders an appeal moot should be limited to their specific facts*

We understand the oft-repeated "general rule" that termination of juvenile court jurisdiction moots an appeal as acknowledging that, given the unique nature of juvenile court jurisdiction, termination thereof will often prevent the reviewing court from granting effective relief. Our understanding of the language in this way is consistent with how, in most cases citing such a "general rule," the reviewing court goes on to consider whether the circumstances of the case prevent the court from granting effective relief (see, e.g., *In re Rashad D.* (2021) 63 Cal.App.5th 156, 164 (*Rashad D.*); *C.C., supra,* 172 Cal.App.4th at p. 1488)—something that would not be necessary, were we to take literally the rule's pronouncement that termination of juvenile court jurisdiction renders moot an appeal of an earlier order.

Some decisions, including one cited by Father, have articulated a different basis for the "general rule" that termination of juvenile court jurisdiction renders a pending dependency appeal moot: Namely, that "the juvenile court has no jurisdiction to conduct further hearings in the now-closed case" (unless a party also appeals the termination of jurisdiction) (*Rashad D., supra,* 63 Cal.App.5th at p. 164), so "a remand for

13

further proceedings in the juvenile court would be meaningless." (*Id*. at p. 165.) This reasoning ignores that when an appellate court reverses with directions, it revests the lower court with jurisdiction to follow those directions. (See, e.g., *Francisco W.*, *supra*, 139 Cal.App.4th at pp. 704–705.) Thus, to the extent these cases hold that an appellate court cannot effectively require the juvenile court to correct reversible error solely because the latter has terminated jurisdiction, we disagree.

Cases that appear to express such a view rely primarily on *Michelle M., supra,* 8 Cal.App.4th at p. 330 as its source. (See, e.g., *Rashad D., supra*, 63 Cal.App.5th at pp. 164−165 [citing *Michelle M.* for the proposition that "[u]nless the appellate court reverses or vacates the order terminating dependency, the juvenile court has no jurisdiction to conduct further hearings in the now-closed case . . . [citations] . . . [and] a remand for further proceedings in the juvenile court would be meaningless"]; *Michelle M., supra*, at p. 330 ["Here, no direct relief can be granted even were we to find reversible error, because the juvenile court no longer has jurisdiction and we are only reviewing that court's ruling. We hold that the appeal filed herein . . . is moot. Appellant's remedy was to attack the juvenile court's order terminating jurisdiction in order to raise the issues he urges before us."].) Although the outcome in *Michelle M.* may have been correct on its facts, the blanket rule it espouses regarding mootness is too broad.

First, the authority *Michelle M.* cites in establishing this rule—*In re Lisa M.* (1986) 177 Cal.App.3d 915, 920 (*Lisa M.*)—does not support the rule, nor does *Lisa M.* even consider creating an exception to Code of Civil Procedure sections 43 and 906 and the corresponding power of a remittitur to revest a lower court

14

with limited jurisdiction.  In *Lisa M.*, a mother challenged a juvenile court order continuing her child's placement with a relative and initiating proceedings to terminate the mother's parental rights.  (*Lisa M.*, *supra*, 17 Cal.App.3d at p. 918.)  More than a year after that order, the juvenile court terminated the mother's parental rights in an order that she did not appeal.  (*Ibid.*)  Thus, on the facts of that case, reversing the order on appeal (regarding placement with relatives) could not have granted the mother effective relief unless the appellate court also reversed an order not on appeal (the order terminating the mother's parental rights).  (*Id.* at p. 919.)  The appellate court recognized it had no power to reverse juvenile court orders that had not been appealed.  (*Ibid.*; see also *id.* at p. 920 ["[w]hat [the mother] cannot now do is seek to confer upon this court jurisdiction to affect appealable orders from which no appeal was taken"].)  Thus, no effective relief could have been granted to the mother because reversing the placement order would have been "meaningless" in that it could have had no impact on the final, unappealed order terminating her parental rights.  (*Id.* at p. 919.)

The court in *Michelle M.* concluded that the same reasoning applied to the appeal from a juvenile court's dispositional order at issue in that case.  (*Michelle M., supra*, 8 Cal.App.4th at pp. 328−329.)  The court in *Michelle M.* reasoned that reversing the dispositional order could not facilitate effective relief unless the court *also* reversed the not-appealed-from order terminating juvenile court jurisdiction—otherwise the juvenile court would lack jurisdiction to issue a new dispositional order.  (*Ibid.*)

But, as discussed above, an appellate court reversal and resulting remittitur gives the juvenile court jurisdiction to act

15

on directions the Code of Civil Procedure expressly authorizes an appellate court to issue. Thus, the reasoning of *Lisa M.* was not implicated in *Michelle M.*, and is likewise not automatically implicated whenever juvenile court jurisdiction is terminated following an appeal from a juvenile court order where the appellant does not appeal the termination of jurisdiction.

Nonetheless, *Michelle M.* appears to have reached the correct result on the facts of that case—but not for the reasons reflected in the rule it created and upon which it purported to rely. This is because the appeal in *Michelle M.* was in part from custody and visitation rulings in a dispositional order. (*Michelle M., supra*, 8 Cal.App.4th at p. 328.) When the juvenile court terminated its jurisdiction in *Michelle M.*, it also issued a custody and visitation order and transferred that order to family court to be enforced. (*Ibid.*) Thus, under the facts presented in *Michelle M.*, the exit order provided the juvenile court's last word on custody and visitation (in addition to terminating jurisdiction). Therefore, reversing an earlier order on custody and/or visitation could not deliver the desired relief—namely, a change in custody and/or visitation. Even after such reversal, the more recent custody and visitation terms contained in the exit order would govern. To effect an actual change in custody and visitation rights, the appellate court would need to reverse the juvenile court's last word on custody and/or visitation—the exit order terminating jurisdiction on those terms—which, as *Lisa M.* notes, the appellate court does not have the power to do if that order has not been appealed. This appears to have been the situation in *Michelle M.* (see *Michelle M., supra*, 8 Cal.App.4th at p. 328)*,* and thus the failure of the appellant in that case to appeal an exit order that *both* terminated jurisdiction *and* set forth the

16

final custody and visitation arrangement mooted the appeal from the earlier dispositional order regarding custody and visitation.

*Michelle M.* does not explain its holding in this way, however. Rather, it expressly states a broad rule that a reviewing court lacks the power to order further proceedings in the juvenile court after a nonappealed order terminating jurisdiction. (*Michelle M., supra*, 8 Cal.App.4th at pp. 329–330.) We disagree with *Michelle M.* to the extent it states such a broad rule not necessary to the correct outcome on the specific facts of that case.

A few cases, including *Rashad D.,* cite *Michelle M.* for this broad principle. Our conclusion that the *Michelle M.* rule is too broad does not mean that we view all cases citing the *Michelle M.* rule as incorrectly decided. To the contrary, like the *Michelle M.* decision itself, the published decisions relying on *Michelle M.* appear to have been correctly decided on their facts for reasons other than those reflected in the *Michelle M.* rule and reasoning. (See *Rashad D., supra*, 63 Cal.App.5th at pp. 159, 164 [discussed below]; *N.S., supra,* 245 Cal.App.4th at pp. 56–57, 60 [citing *Michelle M.* in holding the mother's challenge to jurisdictional finding mooted by subsequent order terminating jurisdiction and restoring the mother full custody]; *C.C., supra,* 172 Cal.App.4th at pp. 1488–1489 [appeal from dispositional order regarding visitation mooted by unappealed exit order terminating jurisdiction where the exit order reinstated the mother's visitation rights, providing her "the very relief she seeks by her appeal"].) In *Rashad D.*, for example, the father challenged a "jurisdiction finding [that] resulted in an adverse juvenile custody order" and "[sought] to have that custody order set aside." (*Rashad D., supra*, 63 Cal.App.5th at p. 164.)

Following that appeal, the juvenile court terminated jurisdiction in an unappealed order that also addressed custody. (*Id.* at pp. 159, 164.) Although the *Rashad D.* court recited the broad *Michelle M.* rule, the court expressly limited its holding to a scenario in which an appellant challenges a custody determination superseded by custody terms contained in an unappealed exit order. (See, e.g, *id.* at p. 159 [noting that "termination of dependency jurisdiction does not necessarily moot an appeal from a jurisdiction finding *that directly results in an adverse juvenile custody order*," and noting that father needed to also appeal "from the orders terminating jurisdiction *and modifying the parent's prior custody status*" in order for an appellate court to be able to grant effective relief], italics added.)

### B. *Mother's Appeal Is Not Moot*

We now apply the principles and framework clarified above to Mother's appeal. We conclude that we can afford Mother effective relief.

#### 1. *Upon remand, the juvenile court would have the power to issue the requested restraining order*

Here, were we to reverse, we could instruct the juvenile court to issue the desired restraining order. As discussed above, Code of Civil Procedure sections 43 and 906 give us the power to do so, even after termination of juvenile court jurisdiction, and the remittitur issued as a result would grant the juvenile court the power to carry out our directions. The juvenile court's order would then be enforceable by the family court. (See *Garcia v. Escobar* (2017) 17 Cal.App.5th 267, 271 ["once the juvenile court

18

terminates jurisdiction, the family court assumes jurisdiction over restraining orders issued in juvenile court"], citing § 362.4.)

The terms of the unappealed order terminating jurisdiction in this case do not supersede or conflict with the ruling Mother challenges on appeal—the denial of Mother's request for a restraining order. Thus, unlike in *Michelle M.* and *Rashad D.*, the order terminating juvenile court jurisdiction would not need to be modified in order to grant Mother the relief she seeks. Mother's failure to appeal therefrom does not prevent us from providing effective relief.

The dissent concludes that the juvenile court lacks fundamental jurisdiction to issue Mother's requested restraining order upon remand based not on the broad *Michelle M.* rule with which we disagree above, but rather on the language of the specific statute governing Mother's restraining order request, section 213.5. The dissent notes that section 213.5 only authorizes a juvenile court to issue a restraining order "until the time that the [dependency] petition is dismissed or dependency is terminated." (§ 213.5, subd. (a).) Because this period of authority had ended, the dissent reasons, were we to find reversible error and remand, the juvenile court would lack fundamental jurisdiction to provide effective relief—that is, to issue the requested restraining order—and any effort by the juvenile court to issue such a restraining order would be void.

None of the fundamental jurisdiction cases the dissent cites addresses a lower court's jurisdiction—fundamental or otherwise—following remand to correct errors a reviewing court has identified on appeal. Rather, these cases consider arguments that a lower court lacked fundamental jurisdiction to rule on a particular issue at the time of that ruling. Certainly, had the

19

juvenile court here lacked fundamental jurisdiction to issue a restraining order at the time it ruled on Mother's request, remittitur following an appeal could not vest the juvenile court with fundamental jurisdiction it otherwise lacks. But that is not the case here. The dissent does not dispute that the juvenile court had fundamental jurisdiction to rule on Mother's request for a restraining order at the time of that ruling. And, as discussed above, a remittitur with directions provides a lower court with the requisite authority to correct errors that a reviewing court has identified on appeal. The dissent identifies no case supporting a contrary view. Nor would such a rule make sense. Consider, for example, a civil jury trial in which the defendant is found liable, and a final judgment to this effect is entered. The trial court under those circumstances lacks any power after the expiration of its statutory authority to order a new trial. Yet this is exactly what a trial court may do, following an appeal in which the judgment for plaintiff is reversed and the case is remanded with directions to grant a new trial. This is because a remittitur with directions reinstates the trial court's power to act. So, too, could a reversal with directions and resulting remittitur in this case provide a juvenile court jurisdiction to execute those directions—namely, to issue the permanent restraining order Mother seeks. The cases regarding fundamental jurisdiction that the dissent cites are inapposite. They consider, retrospectively, whether the lower court lacked the power to issue the decision being reviewed by the appellate court—not prospectively whether the lower court has the power to issue a decision upon remand, were an appellate court to so instruct. Here, there is no question that the juvenile court had the power to act under section 213.5 when it issued the order

20

from which Mother appeals. The cases the dissent cites do not consider, let alone stand for the proposition, that a remittitur cannot empower a lower court to correct an erroneous decision— here, by issuing the requested restraining order.[6]

### 2. *Issuing Mother the requested restraining order would still immediately afford Mother effective relief*

We must next determine whether the juvenile court issuing Mother the desired restraining order upon remand would still afford Mother *effective* relief, now that the dependency proceedings have been terminated. We conclude that it clearly would. The restraining order a juvenile court could issue

---

[6] Because a remittitur could revest jurisdiction in the juvenile court for the limited purpose of issuing Mother's requested section 213.5 restraining order upon remand, the dissent's conclusion that a family court could not issue such an order is beside the point. Moreover, the dissent appears to base this conclusion on a view that section 213.5 and Family Code section 6320, the statutory authority for family court to issue restraining orders, apply different substantive standards. They do not. (See, e.g., *Priscila N. v. Leonardo G.* (2017) 17 Cal.App.5th 1208, 1214 ["[S]ection 213.5 was amended so that the juvenile court could issue [domestic violent restraining orders] under the same standards provided for in the [Domestic Violence Prevention Act of which Family Code section 6320 is a part]." "[Domestic violent retraining orders] issued after a noticed hearing by the juvenile court under . . . section 213.5 . . . are indistinguishable in every respect from those issued after noticed hearing under article 2 of the [Domestic Violence Prevention Act]."]; *In re Bruno M.* (2018) 28 Cal.App.5th 990, 997 [applying language from Family Code section 6320 to define the term "disturbing the peace" in section 213.5], italics omitted.)

following reversal and remand could afford Mother protection necessary to assure her safety in the same way it would have, had the juvenile court issued the order while dependency proceedings were still pending. Mother's need for such protection did not end simply because the dependency proceedings concluded. A juvenile court order granting Mother's request would immediately provide her such protection. Her appeal is not moot.

We now turn to the merits of that appeal.

### C. *The Juvenile Court Did Not Abuse Its Discretion in Denying Mother's Request for a Permanent Restraining Order*

Section 213.5 governs the issuance of restraining orders by the juvenile court. Thereunder, the juvenile court may issue, inter alia, an order "enjoining any person from molesting, attacking, striking, stalking, threatening, . . . battering, harassing, telephoning, . . . contacting, . . . coming within a specified distance of, or disturbing the peace of . . . any parent . . . of the child [who is the subject of dependency proceedings], regardless of whether the child resides with that parent, . . . upon application in the manner provided by Section 527 of the Code of Civil Procedure or, if related to domestic violence, in the manner provided by Section 6300 of the Family Code." (§ 213.5, subd. (a).) Mother challenges the juvenile court's denial of her section 213.5 request as unsupported by the evidence. She argues in the alternative that the court abused its discretion because it applied the wrong legal standard in adjudicating her request. We disagree on both counts for reasons we explain below.

22

### 1. *The evidence supports the juvenile court's denial of Mother's restraining order request*

"[A]ppellate courts apply the substantial evidence standard to determine whether sufficient facts supported the factual findings in support of a [section 213.5] restraining order and the abuse of discretion standard to determine whether the court properly issued the order." (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 866.) When an appellant challenges "the sufficiency of the evidence, . . . [i]f there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed." (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 210−211.)

The substantial evidence standard of review takes on a unique formulation where, as here, "the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) "[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W., supra,* at p. 1528.) Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Ibid.*)

Issuance of a restraining order under section 213.5 does not require "evidence that the restrained person has previously molested, attacked, struck, sexually assaulted, stalked, or battered the [petitioner or person to be protected]." (*In re B.S.*

(2009) 172 Cal.App.4th 183, 193.) It may be sufficient to show that the person to be restrained "disturb[ed] the peace" of the petitioner (§ 213.5, subd. (a)), meaning he or she engaged in conduct that destroyed the petitioner's "mental or emotional calm." (*In re Bruno M., supra*, 28 Cal.App.5th at p. 997.) Section 213.5 is analogous "to Family Code section 6340, which permits the issuance of a protective order under the Domestic Violence Prevention Act . . . if 'failure to make [the order] may jeopardize the safety of the petitioner.' " (*In re B.S., supra*, at p. 194; accord, *In re N.L.* (2015) 236 Cal.App.4th 1460, 1466; *In re C.Q.* (2013) 219 Cal.App.4th 355, 364.)

Mother argues that the record contains evidence "compel[ling] a finding in her favor" and thus that the court's denial of her section 213.5 request should be reversed. We disagree.

The parties presented competing and conflicting evidence on key issues related to Mother's request. Father denied banging on the doors and windows of Mother's home during the October 2019 incident, whereas Mother and the children indicated that he did. Mother and S.G. indicate Father has hit Mother in the past, but Father denies these allegations. All allegations of physical aggression by Father made in referrals, family court custody disputes, and juvenile court requests were ultimately deemed unsupported or inconclusive.

These evidentiary conflicts must be considered in the larger context of a record reflecting almost 10 years of the parents falsely accusing each other of a myriad of wrongs and misbehavior, as well as the conclusion of the children's counsel in the family court proceedings that Mother had coached the children regarding what to say about Father and the custody

24

dispute. Mother's restraining order request thus obligated the juvenile court to make highly subjective evaluations about competing evidence. The court appears to have considered this evidence and discounted Mother's and the children's accounts of Father's behavior, expressly finding that Mother had coached the children in connection with their statements to DCFS, and that Mother had acted "in bad faith." It is not our function to second-guess such credibility determinations or weighing of the evidence. (See *R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 780 ["[w]e defer to the trial court's credibility resolutions and do not reweigh the evidence"].) Nor does merely conflicting evidence support an insufficiency of the evidence claim (see *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 [substantial evidence review does not require reversal merely because "the trial court might have reached a different result had it believed other evidence"])—let alone a claim that the evidence in the record *compels* resolution of Mother's request in her favor.

Mother further points to Father's criminal history in 2011 and 2015, which included either arrests or convictions for domestic violence, as well as her testimony that Father violated the 2019 temporary restraining order by parking near her driveway. This evidence—even considered together with the conflicting evidence discussed above—is not " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support' " the requisite finding—namely, that a permanent restraining order was necessary to protect Mother's safety. (*In re I.W., supra,* 180 Cal.App.4th at p. 1528; see *In re B.S., supra*, 172 Cal.App.4th at p. 193.)

The court expressly questioned Mother's credibility, and the record does not contain even the most basic details of Father's

25

at least six-year-old criminal history (such as whether he was arrested or convicted). If the court chose to believe Father's version of events—as it reasonably could have, and as its findings regarding Mother suggest it did—then the record does not contain substantial evidence of any violent behavior by Father for almost four years before Mother's November 2019 restraining order request (or, for that matter, thereafter). (See *In re C.Q.*, *supra*, 219 Cal.App.4th at p. 364 [reversing grant of restraining order where no violent behavior for a year following a domestic violence incident].) We therefore decline Mother's implicit invitation to reevaluate the competing evidence and revisit the juvenile court's failure-of-proof conclusion.

## 2. *The juvenile court did not apply the incorrect legal standard*

Mother argues in the alternative that the juvenile court applied the incorrect legal standard in assessing her request, and thus abused its discretion. " 'If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]' [Citation.] 'The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review [citation].' " (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820–821.)

Mother argues that, because "a restraining order under section 213.5 does not require 'reasonable apprehension of

26

physical abuse,' or threats of harm," the juvenile court applied the incorrect standard when it denied Mother's request by finding "insufficient evidence . . . to show that Mother and/or the children [were] at risk of any threats or actual physical violence by . . . Father." We are not convinced that the juvenile court's statement indicates the court viewed harm, threats of harm, or reasonable apprehension of same as prerequisites for granting a section 213.5 restraining order. The court's statement could also be understood as a rephrasing of the rule that an order should issue only if " 'failure to make [the order] may jeopardize the safety of the petitioner.' " (*In re B.S.*, *supra*, 172 Cal.App.4th at p. 194.)

Even if the juvenile court did incorrectly understand the scope of its discretion, we "should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) Thus, as Mother concedes, a lower court decision applying the incorrect legal standard "is subject to reversal upon a showing it is reasonably probable that, but for the error, the appealing party would have obtained a more favorable outcome." (See *Sabato v. Brooks* (2015) 242 Cal.App.4th 715, 724−725 [applying "reasonably probable" prejudice analysis in the context of an appeal from a Domestic Violence Prevention Act restraining order]; see also *In re Celine R.* (2003) 31 Cal.4th 45, 60 [a "miscarriage of justice" occurs and requires reversal in dependency proceedings when "the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error"].)

For the reasons discussed above, and particularly in light of the juvenile court's findings bearing on Mother's credibility and that Mother coached the children, "[o]n this record, we can say with some confidence that [Mother] did not carry the burden of showing" the requested order was necessary to protect her safety. (*Guardianship of Kassandra H.* (1998) 64 Cal.App.4th 1228, 1240.) We conclude it is not reasonably probable that, even assuming the court applied the incorrect legal standard, Mother would have obtained a more favorable outcome under the correct one.

Accordingly, we find no reversible error in the court's denial of Mother's restraining order.

## DISPOSITION

The juvenile court's order is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>.


                                    ROTHSCHILD, J.

I concur:



            BENDIX, J.

CHANEY, J., Dissenting.

If we were to reverse the juvenile court's denial of mother's request for a restraining order under section 213.5, subdivision (a) and remand for further proceedings, neither the juvenile court nor any other court would be able to grant any relief under section 213.5 because the juvenile court has terminated jurisdiction in the underlying dependency matter. No party has appealed from the juvenile court's order terminating jurisdiction. We can grant no effective relief in this particular juvenile proceeding.[1] The appeal is moot and should be dismissed.

" 'When courts use the phrase "lack of jurisdiction," they are usually referring to one of two different concepts, although, as one court has observed, the distinction between them is "hazy." [Citation.]' [Citation.] A lack of jurisdiction in its fundamental or strict sense results in ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.] On the other hand, a court may have jurisdiction in the strict sense but nevertheless lack " 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." [Citations.] When a court fails to conduct itself in the manner prescribed, it is said to have acted in *excess* of jurisdiction.' [Citation.] [¶] The distinction is important because the remedies are different. '[F]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent. Rather, an act beyond a court's jurisdiction in the fundamental sense is null and void' *ab initio*." (*People v. Lara* (2010) 48

---

[1] Mother's remedy, if she continues to believe she needs and is entitled to a protective order, is to seek one in the family court under Family Code section 6200 et seq.

Cal.4th 216, 224-225; accord *Abelleira v. District Court of Appeal, Third Dist.* (1941) 17 Cal.2d 280, 287-288; *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 369; *In re J.W.* (2020) 53 Cal.App.5th 347, 356 (*J.W.*); *Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 138-139.)  And a remittitur from this or any other appellate court does no more than re-vest a lower court with the *power to act* of which it had been divested with the filing of a notice of appeal or a petition for review.  Neither an appellate court order nor a remittitur creates fundamental jurisdiction *where it does not otherwise exist*, on even a limited basis.[2]

"In this state, fundamental jurisdiction over juvenile dependency cases . . . is governed by Welfare and Institutions Code section 300, which states that a child described by that section 'is within the jurisdiction of the juvenile court.' " (*J.W.*, *supra*, 53 Cal.App.5th at pp. 357-358; cf. *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1493 [dealing with "jurisdiction" of juvenile court to make orders in *ongoing* dependency proceedings even during the pendency of an appeal from an order that may be affected by the appeal—jurisdiction as court's power to act compared to fundamental jurisdiction].)  " 'In dependency proceedings, " '[a] superior court convened as and exercising the special powers of a juvenile court is vested with jurisdiction to make only those limited determinations authorized by the legislative grant of those special powers.' " ' " (*In re A.R.* (2012) 203 Cal.App.4th 1160, 1170.)  "The filing of [a] dependency

---

[2] Indeed, if fundamental jurisdiction exists in the trial court, it continues to exist even during a pending appeal, and the trial court retains the power to act as to matters not affected by the pending appeal.  (*LAOSD Asbestos Cases* (2018) 28 Cal.App.5th 862, 877.)

petition vest[s] the juvenile court with subject matter jurisdiction, i.e., the inherent authority to deal with the case or the matter before it." (*Ibid.*)  Dismissal of a petition or termination of jurisdiction terminates that authority.  And an appellate opinion does not create a person described by section 300 where the juvenile court has said none exists and no party has challenged that finding.

Here, the juvenile court terminated its "fundamental jurisdiction," and no party appealed from the order terminating that jurisdiction.  There is no mechanism before us by which we could reinstate or otherwise affect that conclusion.  (*In re A.R.*, *supra*, 203 Cal.App.4th at p. 1171.)

Mother sought a restraining order in the juvenile court pursuant to section 213.5.  Section 213.5 gives the juvenile court the "exclusive jurisdiction" to enter that order "[a]fter a petition has been filed pursuant to Section 311 to declare a child a dependent child of the juvenile court, *and until the time that the petition is dismissed or dependency is terminated . . .*" or "[a]fter a petition has been filed pursuant to Section 601 or 602 to declare a child a ward of the juvenile court, *and until the time that the petition is dismissed or wardship is terminated . . . .*"[3]  (§ 213.5, subds. (a), (b), italics added.)

By its express terms, then, a court may only act under section 213.5 during the pendency of a juvenile court petition.  Section 213.5 conveys no authority to *any* court outside the bounds of that timeline.

---

[3] Because of the issues presented in this appeal, I have largely limited my discussion to jurisdiction of dependents (§ 300) and omitted any substantial discussion of wards (§ 601 et seq.).

3

A protective order issued under section 213.5 survives the termination of jurisdiction. (§ 362.4, subd. (a).) And the superior court (expressly not acting as a juvenile court) may subsequently modify or terminate an order issued under section 213.5. (§ 362.4, subds. (b), (c).) The Legislature created a mechanism to enforce protective orders issued under section 213.5 by providing that an order issued under section 213.5 "may be used as the sole basis for opening a file" in the family court: "The [juvenile] court may direct the parent or the clerk of the juvenile court to transmit the order to the clerk of the superior court of the county in which the order is to be filed. The clerk of the superior court shall, immediately upon receipt, open a file, without a filing fee, and assign a case number." (§ 362.4, subd. (c).)

By contrast, no authority to *issue* an order under section 213.5 exists outside the window of dependency jurisdiction ending with either a dismissal or termination of a petition under section 300.

The mootness doctrine commands us to "dismiss an appeal when an event occurs that renders it impossible for the court to grant effective relief." (*In re N.S.* (2016) 245 Cal.App.4th 53, 59.) Here, regardless of whether we affirm the juvenile court's order or reverse it, there is no relief any court can grant mother on remand. The juvenile court lacks *fundamental* jurisdiction, as that term is discussed above, and is therefore *currently* without authority to enter an order under section 213.5 even if we concluded that the juvenile court abused its discretion when it declined to do so on mother's request; *any order the juvenile court entered on remand would be beyond its jurisdiction*—void *ab initio.* If the appellate court reversed this juvenile court's ruling on the requested restraining order under section 213.5 given the

4

trial court's unappealed termination of jurisdiction, any order under section 213.5 the juvenile court *later* entered would have no legal effect.

To contrast, this is *not* the case where fundamental jurisdiction in the juvenile court persists.  This is *not* an appeal from an order *finding* jurisdiction that also includes review of a restraining order issued under section 213.5, where we could order the juvenile court to modify or otherwise act under section 213.5 *before* dismissing or terminating jurisdiction.  *Here*, in stark contrast, the juvenile court has terminated jurisdiction, and there has been no appeal from any jurisdictional or dispositional order or the order terminating jurisdiction.  The foundational element of any action under section 213.5 is juvenile court jurisdiction.  That foundational element is absent.

"As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot.  [Citation.]  However, dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.'  [Citations.]  [¶]  'An issue is not moot if the purported error infects the outcome of subsequent proceedings.' " (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) "[A]n erroneous jurisdiction finding," for example, "can have unfavorable consequences extending beyond termination of dependency jurisdiction and that termination does not necessarily moot an appeal of such a finding." (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 164.)  As in all cases, the mootness analysis in this case is specific *to this case*.  I am aware of no authority to support the obviously incorrect proposition that an appellate court can *never* grant effective relief in a dependency appeal following the unappealed termination of juvenile court

5

jurisdiction.  But the fact that an appellate court may view a trial court's order as reversible error does not itself on remand vest a trial court with subject matter jurisdiction that it otherwise would not have.

An erroneous finding under section 213.5 *can* have unfavorable consequences extending beyond termination of dependency jurisdiction.  In *In re Cassandra B.* (2004) 125 Cal.App.4th 199, for example, the Court of Appeal considered mootness in the context of a juvenile court protective order *granted* under section 213.5, subdivision (a).  The Court of Appeal explained that "[b]efore a hearing on the issuance of an order pursuant to . . . section 213.5, subdivision (a), the juvenile court is required to conduct a search as described in Family Code section 6306, subdivision (a).  Family Code section 6306, subdivision (a) in turn provides:  'Prior to a hearing on the issuance or denial of an order under this part, the court shall ensure that a search is or has been conducted to determine if the subject of the proposed order . . . has any prior restraining order.'  Under . . . section 213.5, subdivision (k)(2), the juvenile court must consider the *existence* of the prior restraining order in determining whether to issue another one against the same party:  'Prior to deciding whether to issue an order under this part, the court shall consider the following information obtained pursuant to a search conducted under paragraph (1): . . . any prior restraining order; and any violation of a prior restraining order.' " (*Cassandra B.* at p. 209, italics added.)  The Court of Appeal explained that the fact that the juvenile court *must* consider the *existence* of the prior restraining order—the fact that the *existence* of a potentially erroneous prior restraining order might infect the outcome of subsequent proceedings—was a sufficient basis to

6

conclude that the matter was not moot.[4] *Correcting error that might infect subsequent proceedings is itself effective relief.* But *if* the juvenile court's order here was erroneous, *it did not have the potential to infect subsequent proceedings.*

*There is no statutory or any other legal requirement that a court, when considering whether to grant a restraining order under any statutory authority, consider a previous* denial *of a request for a restraining order.* And to suggest that a court

_____

[4] The appropriate disposition on reversal of a juvenile court's order under section 213.5 after termination of jurisdiction would involve either vacatur of the order or remand to the *family* court for further proceedings, and then under Family Code section 6200 et seq. (See *In re John W.* (1996) 41 Cal.App.4th 961, 965.) The Legislature appears to have intended the end of dependency proceedings to be the end of juvenile court involvement in family disputes. (See § 362.4.) While the statutory frameworks of section 213.5 and Family Code section 6200 et seq. restraining orders are virtually identical, in practice, there are meaningful differences that render the juvenile court an inappropriate forum for custody fights not involving dependency jurisdiction. (See *In re Travis C.* (1991) 233 Cal.App.3d 492, 502 [outlining critical distinctions between juvenile dependency and family court proceedings]; *In re John W.*, at pp. 970-973 [same].) If the request for a restraining order were brought in family court under Family Code section 6200 et seq., for example, the court would *not* consider the question in light of how a restraining order *would benefit the children*; the juvenile court, considering a request under section 213.5, however, *must*: "Juvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law shall consider . . . the best interests of the minor in all deliberations pursuant to this chapter." (§ 202, subd. (d).)

*should* or *might* consider a previous denial of a restraining order when determining a request—in the absence of *any* authority that it do so—has potentially *dangerous* consequences. In sum, the denial of a restraining order under section 213.5 does not have even the potential to infect subsequent proceedings (assuming it was erroneous), but suggesting that it *does* may lend itself to *improper* considerations of that premise in the future.

To conclude that potentially erroneous orders remain justiciable *because* they are potentially erroneous is to conclude that mootness is no more.

Holding that an appeal is not moot *solely* because a trial court might have erred dismantles the mootness doctrine wholesale.

I would have concluded that the appeal was moot. On that basis, I would dismiss the appeal.

I respectfully dissent.

CHANEY, J.